# KENTUCKY COURT OF APPEALS

Mary Ann Garner v. George Garner, et al.

[Abstract Kentucky Law Reporter, Vol. 4—823.]

**Capacity to Make Conveyance.**

One who has mind enough to understand the nature and character of the transaction he is consummating in executing a deed, has mental capacity sufficient to make such a deed and the same is valid.

**Parol Proof of Consideration in a Deed.**

A conveyance of real estate on the faith of a parol agreement of the grantee to hold it for others, may be enforced when the consideration is merely nominal, and where there is a substantial consideration for the execution of a deed, and there is no allegation nor proof of a mistake or fraud to establish the agreement to hold the title for others, such parol agreement can not be shown by parol.

APPEAL FROM BATH COURT OF COMMON PLEAS.

March 1, 1883.

Opinion by Judge Pryor:

The land in controversy in this case at the date of the conveyance by Andrew Garner to his daughter, Mary Ann Garner, was worth not exceeding $2,500, increased in value $700 or $800 by reason of the improvements made upon the place by the daughter after the date of the conveyance. The grantor when he made the conveyance was about eighty years of age and had been afflicted with rheumatism for many years and to such an extent as to render him incapable of much manual labor. He had several children, to some of whom he had made advancements and to others of whom

he had given but little estate. His wife was living and in feeble health; his farm and buildings were in a dilapidated condition; he had become involved in debt to the amount of $600 or $700; his land had been mortgaged and executions on judgments were in the hands of the officer, and his children had all left but one. Mary Ann, the appellant, remained at the home of her parents, was kind and attentive to them and always ready to minister to their wants and to aid the father in his pecuniary troubles. There was a nephew of the old man in whom he had confidence and who had already involved him in debt.

M. J. Shrout, a neighbor of the family and a witness for the appellees, states that at the instance of Mary Ann he saw the old man and attentive to them and always ready to minister to their wants him from this nephew; that he had two interviews with the father without informing him as to the character of the conveyance, or the undertaking between him and Mary Ann that she was to hold it for the children after the death of her father. At the second interview the old gentleman said to him he had concluded to make the deed to his daughter. The deed was then prepared and read over to him, the consideration expressed being $20 per acre. This consideration was arrived at by ascertaining the debts Mary Ann was to pay and the value of keeping her aged parents during their lives. The whole being estimated as equivalent to $20 an acre for the land. This witness further states that it was a sham deed and so understood by himself and Mary Ann, and that the old man's mental condition was such as rendered him incompetent to transact business. He says he told the old man that Mary Ann was a kind woman, had taken care of them and if the conveyance was made to her she would pay off his debts. The testimony of this witness shows that he, at the time or shortly before, had taken a note of this nephew with the father of the appellant as surety, and that the old man but a short time prior thereto had executed a mortgage to the father of witness to secure a loan of $500, showing that at least this witness was willing to risk the mental capacity of the old man in other transactions besides the execution of this sham deed.

What is inconsistent with his view of the case is also manifest from the subsequent management of the farm by Mary Ann and the constant efforts by her to pay off the debts. She raised and sold stock, exercising the greatest economy in the endeavor to hold the

farm and execute fully her part of the contract, and if this controversy was with reference to the deed prepared by Shrout the proof in this cause would entitle her to the land, because it clearly appears that the payment of debts by her, the maintenance of the old people and the value of services rendered was of greater value than the land, and this is proved by disinterested witnesses. But the conveyance prepared by Shrout is not involved in this controversy only so far as it sheds light on the conveyance prepared by Judge Elliott in 1866, which is the subject of this attack. After the deed prepared by Shrout and even before, this daughter worked as a hand upon the farm, feeding stock of every kind, cultivating the crops, and, to use the language of one of the witnesses, doing all sorts of work on the place except splitting rails. She paid off the debts, raised and sold stock, made improvements of the value of $700 or $800, and not until after this was done and the death of the old man did these appellees attempt to have the conveyance of 1866 canceled. They attack it upon several grounds.

1st.   Because it was obtained by the exercise of an improper influence by the appellant over her father.

2nd.   That it was a part of the contract that she was to hold the land in trust for herself and the balance of the children.

3rd.   That the conveyance was made to defraud creditors and to prevent the nephew from getting the estate.

4th.   That at the date of the conveyance the grantor was incompetent by reason of his feeble intellect to execute such a paper.

Many witnesses were examined as to the mental capacity of the grantor and the preponderance of the testimony conduces to the conclusion that he had mind enough to understand the nature and character of the transaction he was consummating. That his daughter had an influence over her father is plain from the entire proof in the record, but that she made any improper use of it to induce her father to make the conveyance is not shown by the proof. The witness, Shrout, who wrote the first conveyance, advised its execution and he says he understood that she was to hold the land for all the children and take care of the aged couple as long as they lived. That the appellant so stated time and again is shown by several witnesses and that it may have been her purpose we think is manifest. But we do not understand that appellant regarded the conveyance as imposing upon her any such obligation, or that any-

thing transpired between herself and her father with reference to the contract which imposed such a duty upon her. She would scarcely have undertaken to manage her entire business, pay off his debts, make improvements of the value of not less than $700 or $800 and work as a common laborer in his fields for the pleasure of being forced to surrender the fruits of all her energies and labor by dividing the estate between herself and the balance of the children at her father's death.

It is said that one of her brothers helped her work on the farm and cultivated the crops. This may be, but that brother is making no claim against her, and there is nothing in the record showing that he is to reap any benefit from a decision in his sister's favor. for the reason, as she stated, that she was invested with title, and that such would be the control of the husband over it as would if the fact that she declined to marry one to whom she was engaged That she felt her obligation to support her parents is evidenced from the fact that she declined to marry one to whom she was engaged for the reason, as she stated, that she was invested with title, and that such would be the control of the husband over it as would if he saw proper deprive her parents of a home. Her affection for her parents and other kindred seems to have been greater than that for her lover and she surrendered him that she might be the better able to take care of them. It is said that a will was written by the old man after this conveyance, by which he devised this land to certain of his children and that the will was destroyed. It is shown that a will was written but there is no evidence that it was destroyed by the appellant or that she has concealed it, and if it had been made and recorded it could not have divested the appellant of title. The conveyance in this case is absolute, vesting the daughter with the fee, with the consideration expressed, and can a party in such a case in the absence of mistake or fraud show that it was intended as a conveyance in trust? There is no mistake alleged in this case and no fraud shown in the execution of the paper, because appellees' own witness swears that it was executed as all parties wanted it.

An attempt is then made by parol proof to show that the interest of the appellant in this land was limited to its control only during the life of the grantor, and then it passed to all the children. It converts an absolute estate into a mere supervisory power over the land conveyed, when a consideration appears on the face of the in-

strument and that consideration or its equivalent is shown to have been paid. The first conveyance written and from which flows much of the testimony as to the manner of the holding by the appellant was not satisfactory to the parties and the father of appellant applied to Judge Elliott to prepare another conveyance. This conveyance is the subject of controversy, and what transpired at the time it was prepared by the judge who was then practicing his profession will show how appellant's father understood the transaction and go far in aiding this court in the decision of the questions involved. The deposition of Judge Elliott shows that the old man dictated the entire instrument. He informed the judge that his daughter (who was present) was to be the grantee in the deed; that she had lived with him all her life, and had been his principal agent in the management of his business; that by her energy and industry she had paid off his debts, and when she arrived at age he had promised her if she would remain with him he would pay her for her services; that she had worked hard for him and should be well paid, and he really owed her more than the land was worth; that $20 an acre at which he put the land would not be equal to the value of her services, and that appellant was present but said nothing whatever in regard to the matter. Judge Elliott had subsequent interviews with the old man and had no doubt of his mental capacity, and it is certain we think from his statement that the father of the appellant was executing a fixed purpose of his own in conveying to his daughter who had stood by him in his struggle with creditors and finally by her own energy and business tact saved him from financial ruin.

Others testify that her father recognized her as the owner of the land, and many of his neighbors, men advanced in years and on perfect equality socially with the decedent when alive, give it as their opinions that he was entirely competent to understand the nature of business transactions, and to execute them at the date of his conveyance with his daughter. It will be conceded that a gift or a conveyance of property on the faith of a parol agreement to hold it for others may be enforced when the consideration is merely nominal, or a trust may be established when the conveyance purports to be based upon a valuable consideration, the recital of the consideration being shown to be false, or contradicted by proof on the part of those for whose benefit the trust was created. *Blodgett v. Hildreth,* 103 Mass. 484; *Porter v. Mayfield,* 9 Harris (Pa.) 263.

Here it is insisted that the daughter promised, notwithstanding the consideration expressed in the deed and shown by the proof, that she would only hold the estate conveyed during the life of her father, and parol testimony is resorted to without an allegation of mistake to establish the agreement. This we think can not be done, and when the charge of fraud and undue influence is not sustained, for none is shown, the entire cause of action alleged must fail. While there is much testimony introduced in this case in regard to the declarations made by the daughter of her purpose to divide the estate, and that she held it for that purpose, it is not inconsistent with her right to the absolute fee, as it was no doubt her intention to devote her life to providing for the comfort of her aged parents and then giving to her brothers and sisters such of the estate as she saw proper. Her mother was living and cared for by the daughter when this action was instituted, and we have seldom read a record where more affection has been exhibited for parents by a child than is manifested in this case by the daughter, and we think from no selfish motives, as the maintenance of the two old people and the preservation of the estate from bankruptcy drove her from the loom to the cornfield where she labored as a common farm hand that she might be able to satisfy the demands of creditors and save the old homestead, and when successful in her efforts the other children should not be allowed to compel a division of this small estate without compensating her for her services, and this compensation having been fixed by the parent and others, who regarded the land as inadequate for that purpose, the chancellor will not disturb the conveyance.

The judgment is therefore *reversed* and cause remanded with directions to dismiss the petition in so far as it seeks to cancel the conveyance.

*Reid & Stone, for appellees.*

*R. Gudgell & Son, J. S. Hurt, J. M. Nesbitt, Wm. Lindsay, for appellant.*

[Cited, *Pendleton v. Patrick,* 22 Ky. L. 378, 57 S. W. 464; *Wright's Exr. v. Wright,* 32 Ky. L. 659, 106 S. W. 856; *Ryan v. Logan County Bank,* 132 Ky. 625, 116 S. W. 1179, 119 S. W. 768.]